[996 NYS2d 710]

In the Matter of KENNETH J. GELLERMAN, a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND, ELEVENTH, AND THIRTEENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, November 26, 2014

APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Thomas Graham Amon* of counsel), for petitioner.

*Chris McDonough*, Garden City, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a petition dated August 17, 2012, which contained five charges of professional misconduct. After a prehearing conference held on November 4, 2013, and a hearing conducted on December 16, 2013, the Special Referee issued a report, which sustained all charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as the Court deems just and proper. Counsel for the respondent has submitted a letter dated April 25, 2014, indicating that because of "circumstances beyond [his] control," no responsive papers were being submitted.

Charge one alleges that the respondent converted client funds entrusted to him as a fiduciary, in violation of former Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]). In April 2001, Ramon Rodriguez retained the respondent to commence a personal injury action. In 2006, the respondent settled the action on Mr. Rodriguez's behalf for $35,000. On or about August 7, 2006, the respondent deposited the $35,000 settlement check into his escrow account at JP Morgan Chase Bank, entitled "IOLA Kenneth J. Gellerman," bringing the balance to $50,006.22.

The respondent was required to maintain at least $19,100 in his escrow account on behalf of Mr. Rodriguez. After depositing the Rodriguez funds into his escrow account, the respondent issued checks to himself and other clients throughout the remainder of 2006, which cleared against the Rodriguez funds. By September 8, 2006, the balance in the escrow account fell to

$12,995.27. Five years later, on July 1, 2011, the escrow balance was only $5,188.39. Throughout the first two weeks of July 2011, the respondent deposited several client settlement checks into his escrow account. On or about July 15, 2011, the respondent issued Mr. Rodriguez a check in the amount of $19,100, representing his share of the settlement.

Charge two alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit and/or misrepresentation, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). On July 12, 2011, the respondent appeared at the offices of the Grievance Committee for an examination under oath. When asked by staff counsel whether he had maintained the Rodriguez funds in escrow from the time of deposit until July 12, 2011, the respondent replied "yes." The respondent knew or should have known at the time of his examination under oath that the Rodriguez funds had not been maintained intact in his escrow account.

Charge three alleges that the respondent failed to cooperate with the Grievance Committee's investigation of the Rodriguez complaint, in violation of rule 8.4 (d) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). During the course of its investigation of the Rodriguez complaint, the Grievance Committee sent the respondent a letter dated July 13, 2011, requesting bank statements for his escrow account, for the periods of January 2008 through September 2008, and January 2011 through June 2011, within 10 days of his receipt of the letter. When the respondent failed to provide his bank statements, the Grievance Committee sent the respondent a second letter dated July 29, 2011, requesting the records within five days. In a letter to the Grievance Committee dated August 11, 2011, the respondent stated that the requested records "would be available by early September 2011." The Grievance Committee sent a third and final letter dated August 12, 2011, requesting the information no later than September 8, 2011. The respondent never provided the requested bank records.

Charge four alleges that the respondent converted funds entrusted to him as a fiduciary, in violation of rules 1.15 (a) and 8.4 (h) of the Rules Professional Conduct (22 NYCRR 1200.0). In June 2010, Katherine Lawson retained the respondent to represent her as a plaintiff in a personal injury action. In 2011, the respondent settled the action on Ms. Lawson's behalf for

$25,000. On July 22, 2011, the respondent deposited the $25,000 settlement check into his escrow account at JP Morgan Chase Bank, bringing the balance to $26,819.42. The respondent was required to maintain at least $16,500 in his escrow account on behalf of Ms. Lawson. After depositing the Lawson funds, the respondent issued checks to himself and other clients throughout the remainder of July 2011, all of which cleared against the Lawson funds. By July 31, 2011, the escrow balance fell to $2,539.90, well below the amount the respondent was required to maintain on behalf of Ms. Lawson.

Charge five alleges that the respondent engaged in a pattern and practice of converting funds entrusted to him as a fiduciary, in violation of rules 1.15 (a) and 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). Between January 2010 and July 21, 2011, the respondent deposited settlement checks into his escrow account on behalf of five clients: Samuel Terasme, Carla Heckstall, Nahomie Leger, Christine Key, and Martisha Jones. Although in most instances the respondent issued checks to these clients for a portion of their settlement share after depositing their settlement checks, by July 21, 2011, the respondent was still required to maintain at least the following amounts on behalf of those clients:

| Client | Amount |
|---|---|
| Samuel Terasme | $7,740 |
| Carla Heckstall | $3,000 |
| Nahomie Leger | $4,200 |
| Christine Key | $2,310 |
| Martisha Jones | $4,829.43 |

By July 21, 2011, the respondent's escrow balance fell to $1,819.42, below the amount he was still required to maintain on behalf of those clients.

Between June 2010 and August 2011, the respondent deposited settlement checks into his escrow account on behalf of the following six clients: Suzette Ham, Melvette Richardson, Phyllis Reed, Monique Cody, Helen John, and Rodrick Romeo. Although in most instances the respondent issued checks to these clients for a portion of their settlement share after depositing their settlement checks, by September 1, 2011, the respondent was still required to maintain at least the following amounts on behalf of those clients:

| Client | Amount |
| --- | --- |
| Suzette Ham | $2,500 |
| Melvette Richardson | $3,300 |
| Phyllis Reed | $11,500 |
| Monique Cody | $2,000 |
| Helen John | $4,300 |
| Rodrick Romeo | $1,600 |

By September 1, 2011, the respondent's escrow balance fell to $400.60, below the amount he was still required to maintain on behalf of those clients.

Between July and August 2011, the respondent deposited settlement checks into his escrow account on behalf of the following three clients: Keisha Smith, Myriam Noughes, and David Ebanks. The respondent did not issue any checks to these clients through August 2011. By September 1, 2011, the respondent's escrow balance fell to $400.60, below the amount he was required to be maintaining on behalf of those clients.

The respondent did not appear at either the prehearing conference or the hearing. The respondent's counsel appeared at the hearing, but offered no explanation for the respondent's absence, as the respondent provided none to her. As a consequence, no mitigation was offered.

Based on the evidence adduced, and the respondent's admissions contained in his answer to the petition, the Special Referee properly sustained all five charges. Accordingly, the Grievance Committee's motion to confirm the report is granted.

The respondent has a prior disciplinary history consisting of four letters of caution. On April 25, 2008, the respondent was cautioned for failing to make a court appearance, which resulted in a client's personal injury action being marked off the calendar, for failing to restore the action to the calendar, and for failing to inform the client in writing of the status of the case. On May 7, 2009, he was cautioned for filing an action on behalf of a client against the client's landlord without realizing that the client was precluded by law from bringing the claim, and for later failing to advise the client in writing that he decided to close her case. On March 25, 2010, the respondent was cautioned for failing to timely provide a client with the settlement proceeds from her personal injury action and for failing to cooperate with the Grievance Committee's investigation into the matter. On December 6, 2010, the respondent was cautioned for failing to advise a client in writing that he decided to no longer pursue her case.

By decision and order on motion of this Court dated April 4, 2014 (2014 NY Slip Op 68603[U]), Kathleen Higgins, Esq., was appointed as an inventory attorney to, inter alia, take custody of, and inventory, the legal files of the respondent. This appointment was made because it appeared that the respondent had abandoned his practice, leaving numerous legal files behind in his law office. The Grievance Committee's application for an inventory attorney disclosed that 48 new complaints of professional misconduct had been received by the Grievance Committee, after the respondent was suspended. The complaints alleged that the respondent neglected dozens of personal injury matters, continued to practice law after his suspension, and continued to steal clients' funds.

In view of the egregious nature of the misconduct, i.e., a pattern and practice of wilful misappropriation of client funds, the absence of any mitigation presented, and the presence of only aggravating factors, including the respondent's failure to appear at the hearing and his abandonment of his law practice, a disbarment is warranted.

ENG, P.J., MASTRO, RIVERA, SKELOS and DICKERSON, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that, effective immediately, the respondent, Kenneth J. Gellerman, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Kenneth J. Gellerman, shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Kenneth J. Gellerman, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Kenneth J. Gellerman, has been issued a secure pass by the Office of Court Administration,

68

it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).